# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## CENTRAL GRAND DIVISION.

### JANUARY TERM, 1873.

## WILLIAM E. SMITH

*v.*

## JAMES DONELLY.

1. CRIMINAL LAW—*unlawful taking of another's horse, etc.* Where the owner of a horse and carriage left the horse tied to a post, and the same is taken away without lawful authority, by boys, though without intent to steal, they will be guilty of a high misdemeanor under the criminal code.

2. ARREST—*by a private person, without warrant.* A private person may arrest one who has committed a misdemeanor, without suing out a warrant or calling an officer.

APPEAL from the Circuit Court of Madison county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

This was an action of trespass for false imprisonment, brought by James Donelly against William E. Smith. The facts necessary to an understanding of the case are contained

in the opinion. The jury found the defendant guilty, and as-
sessed plaintiff's damages at $250, upon which judgment was
rendered, and the defendant appealed.

Mr. S. T. SAWYER, Messrs. DALE & BURNETT, and Mr.
A. W. METCALF, for the appellant.

Mr. J. H. YAGER, and Mr. DAVID GILLESPIE, for the ap-
pellee.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the
Court:

This was an action for false imprisonment, in which the
plaintiff recovered judgment.

It appears that the defendant's horse and carriage were left
by him on the street, in the city of Alton, in the evening, the
horse being securely tied to a post by a halter. Soon after
nine o'clock the defendant returned to the place where he
had left them and found the horse and carriage gone. He
went home, called his servant and started in pursuit, suppos-
ing the property had been stolen. Shortly before eleven
o'clock he met the horse and buggy on the street, the horse
sweating profusely, although the night was very cold, and
having marks of furious driving. The defendant took the
boys home with him, tied their hands and feet, placed them
on mats in a warm room, and kept them there all night. The
next morning he took them to the calaboose and made com-
plaint before a justice. They were examined during the day
and discharged towards evening.

On the trial of this suit, these boys testified that one of
them found the horse and carriage moving along the street.
Discovering that no one was in the carriage, he got in himself,
and taking up the other boys, one after another, they drove
about for several hours, professing to be looking for the
owner. On this state of facts, the court gave to the jury the

30—66TH ILL.

following instructions, being the first and second in the series:

"If a private person arrest another on suspicion of a felony or crime, he does it at his peril, and unless he can establish the guilt of the person arrested he is liable to an action for false imprisonment. And in this case, although the jury may believe, from the evidence, that the plaintiff was found in the possession of said horse and carriage after the same had been missed by the plaintiff, yet, if they further believe that the plaintiff committed the trespass and false imprisonment complained of, they must find for the plaintiff, unless they further believe, from the evidence, that the plaintiff committed the crime of stealing said horse and carriage.

"If the jury further believe, from the evidence, that the plaintiff came into the possession of said horse and carriage innocently, and with no intention of committing a crime by stealing the same, then the jury must find for the plaintiff, if they believe, from the evidence, that the plaintiff committed the trespass and false imprisonment complained of."

Our criminal code makes the unlawful taking of a horse from the place where it may be left by the owner, a high misdemeanor, and subjects a person guilty thereof to fine or imprisonment. If the plaintiff, with the other boys or by himself, took the horse and carriage from the post where they had been left by the owner, he was guilty of a high misdemeanor under this statute, and the defendant had a right to arrest him without suing out a warrant or calling an officer. While there is no probability that these boys intended to steal this property, there is a good deal of reason to think that they did unlawfully take it, and both of these instructions should have told the jury that the defendant had the right to arrest if the boys were guilty of either of these offenses, instead of confining the right to the case of stealing. The judgment must therefore be reversed.

*Judgment reversed.*